UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KEITH
HORTON,

            Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

_____/

Case No. 2:18-cv-13911
District Judge Paul D. Borman
Magistrate Judge Anthony P. Patti

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 16), GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 17) and AFFIRM THE
COMMISSIONER'S DECISION</u>**

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 16), **GRANT** Defendant's motion for summary judgment

(ECF No. 17), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

      Plaintiff, Timothy Keith Horton, brings this action under 42 U.S.C. §§

405(g) and/or 1383(c)(3) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying his application for supplemental

security income (SSI) benefits.  This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's motion for summary

judgment (ECF No. 16), the Commissioner's cross-motion for summary judgment

(ECF No. 17), and the administrative record (ECF No. 12).

### A.    Background and Administrative History

Plaintiff alleges his disability began on October 4, 2015, at the age of 49.

(R. at 165, 186.)  In his disability report, he lists several conditions (bipolar

disorder, anxiety, sleep disorder, and numbness in hands) as limiting his ability to

work.  (R. at 179.)  His application was denied in July 2017.  (R. at 65-86.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.

at 90-104.)  On May 31, 2018, ALJ Robert Chavez held a hearing, at which

Plaintiff and a vocational expert (VE), Joanne Pfeffer, testified.  (R. at 32-64.)  On

June 20, 2018, ALJ Chavez issued an opinion, which determined that Plaintiff was

not disabled within the meaning of the Social Security Act.  (R. at 14-31.)

Plaintiff submitted a request for review of the hearing decision.  (R. at 160-

164.)  However, on October 16, 2018, the Appeals Council denied Plaintiff's

request for review.  (R. at 1-8.)  Thus, ALJ Chavez's decision became the

Commissioner's final decision.

Plaintiff timely commenced the instant action on December 15, 2018.

### B.    Plaintiff's Medical History

The administrative record contains approximately 269 pages of medical records, which were available to the ALJ at the time of his June 20, 2018 decision. (R. at 30-31, 240-508 [Exhibits 1F-8F].)  Of particular note are those records which occurred on or after October 4, 2015, the alleged onset date (AOD):

- August 2014 – July 2017 records from Henry Ford Allegiance Family Medicine (HFAFM) (R. at 347-377, 392-458);

- April 11/12, 2017 psychiatric/psychological consultative examination report by Kimberly L. Lem, Ph.D. / William D. Brooks, Ed.D. (R. at 378-383);

- April 24, 2017 physical consultative examination report by Laureen McGuire, M.D. (R. at 384-389);

- July 2017 - March 2018 records from LifeWays Community Mental Health (R. at 459-505, 390-391);

- February 21, 2018 new patient evaluation notes from physician Abdullah Adnan, D.O. (R. at 506-508).

These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since September 6, 2016, the application date. (R. at 19.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  major depressive disorder, adjustment disorder with mixed anxiety and depression, post-traumatic stress disorder (PTSD), numbness of the right hand,

3

and hypertension.  (*Id*.)  At **Step 3**, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.  (*Id*. at 20-21.)  **Between Steps 3 and 4**

of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity

("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work [*i.e., exertional limitations*] . . . except he
> can never climb ladders, ropes, or scaffolds [*i.e., postural limitations*].
> He can frequently handle items bilaterally; he can occasionally finger
> with the left hand and frequently finger with the right hand; he can
> frequently feel bilaterally [*i.e., manipulative limitations*].  He can
> never work in unprotected heights or in vibration [*i.e., environmental
> limitations*].  He can perform simple, routine, and repetitive tasks,
> make simple, work-related decisions [*i.e., understanding & memory
> and/or sustained concentration & persistence limitations*]; he can
> have occasional contact with the general public and coworkers [*i.e.,
> social interaction limitations*]; he can tolerate occasional changes in
> the work setting [*i.e., adaptation limitations*].

(*Id*. at 22-25.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 25.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as laundry folder, router, and car wash attendant.  (*Id*. at 26.)  The ALJ

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since September 6, 2016, the date the application was filed. (*Id*.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff sets forth five statements of error, specifically contending that the ALJ Chavez erred by:

1.    failing to properly consider Plaintiff's moderate limitations in concentration, persistence, and pace on his ability to perform [SGA][.]

2.      not giving controlling weight, or proper weight otherwise, to
        treating physician opinions such as Manish Prasad, M.D.[]

3.      failing to incorporate even repeatedly documented impairments
        such as agoraphobia and bipolar disorder into its RFC[.]

4.      improperly analyzing Horton's disability, and the extent to
        which alcohol and/or drug abuse does or does not negate it[.]

5.      failing its credibility assessment, getting key, consequential
        facts wrong, including as to recent relevant work[.]

(ECF No. 16, PageID.586, 590-591.)

The Commissioner contends that substantial evidence supports his decision.

(ECF No. 17, PageID.610 ¶ 2.)

### 1.      Moderate limitations in CPP

In his July 11, 2017 mental RFC assessment, state agency consultant Edward

Czarnecki, Ph.D. concluded that Plaintiff was moderately limited in his abilities to:

(a) understand, remember, and carry out detailed instructions; (b) maintain

attention and concentration for extended periods; (c) interact appropriately with the

general public; (d) get along with coworkers or peers without distracting them or

exhibiting behavioral extremes; and, (e) respond appropriately to changes in the

work setting.  (R. at 73-75.)

At Step 3, as to the four broad areas of functioning, the ALJ found that

Plaintiff was *moderately* limited in his abilities to "understand, remember, or apply

information," "interact with others," and "concentrate, persist or maintain pace

(CPP)." (*See* R. at 20-21.)  By comparison, the ALJ found that Plaintiff was *mildly* limited in his "ability to adapt or manage himself." (*See* R. at 21.)  The ALJ cited Dr. Czarnecki's opinion as to each broad area of functioning.  (R. at 20-21.)  As a result of there not being "at least two 'marked' limitations or one 'extreme' limitation," the ALJ concluded that the "paragraph B" criteria were not satisfied.  (R. at 21.)  Nonetheless, ALJ Chavez then determined that Plaintiff had the mental RFC to:  (a) perform simple, routine, and repetitive tasks; (b) make simple, work-related decisions; (c) have occasional contact with the general public and coworkers; and, (d) tolerate occasional changes in the work setting.  (R. at 22.)

Plaintiff argues that his moderate limitations in CPP are not accounted for by an RFC for "unskilled" or "simple, routine, repetitive work."  (ECF No. 16, PageID.602.)  He also claims that "the limitations included in the hypothetical question," − *presumably the ALJ's references to "simple, routine, repetitive tasks . . . [,]" and "simple work-related decisions . . . [,]" (R. at 58-59)* − and "the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned . . . [,]" − *presumably the VE's testimony that "off task of 20 percent" is "work preclusive[,]" (R. at 61)* − are "insufficient to resolve the question as to CPP's inclusion in the RFC."  (ECF No. 16, PageID.602-603.)

Plaintiff's argument is unavailing.  First, to the extent Plaintiff relies upon SSR 85-15 (*see* ECF No. 16, PageID.602 n.55), this ruling concerns the medical-

vocational rules as a framework for evaluating *solely nonexertional* impairments,

*e.g.*, mental, postural-manipulative, hearing, and visual impairments, as well as

environmental restrictions.  SSR 85-15, 1985 WL 56857 (SSA).  Here, Plaintiff

has exertional *and* nonexertional impairments.  (*See*, *e.g.*, R. at 19, 22.)  *See also*

*Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) ("But SSR 85–15

does not apply to Jordan, who suffers from both exertional and nonexertional

limitations."); *Doneworth v. Shalala*, 76 F.3d 378 (6th Cir. 1996) (agreeing that

"SSR 85–15 does not apply to claimant since he has both exertional and

nonexertional limitations and SSR 85–15 applies to cases where only a

nonexertional limitation is present.").

Second, although Plaintiff relies upon *Benton v. Comm'r of Soc. Sec.*, 511

F.Supp.2d 842 (E.D. Mich. 2007) (Roberts, J.), this District has more recently

concluded that a limitation to unskilled, routine work can be adequate to address a

moderate limitation in CPP.  *Smith v. Comm'r of Soc. Sec.*, No. 13-10862, 2013

WL 6094745, at *8 (E.D. Mich. Nov. 20, 2013) (Zatkoff, J.).  Instead, this Court

has consistently emphasized the need for a case-by-case analysis when assessing

whether a limitation to unskilled work adequately accounts for a moderate

deficiency in concentration and pace, as explained and comprehensively analyzed

in *Bohn-Morton v. Commissioner of Social Security*, 389 F.Supp.2d 804, 805-807

(E.D. Mich. 2005) (Rosen, J.), which emphasizes the need for a case-by-case

analysis and concludes that a limitation to unskilled work adequately accounts for a moderate deficiency in CPP. *See also, e.g., Smith*, 2013 WL 6094745, at *8 ("[T]here is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitations of 'unskilled, routine work' but excludes a moderate limitation in concentration. Rather, this Court must looks at the record as a whole and determine if substantial evidence supports the ALJ's RFC."); *Schalk v. Comm'r of Soc. Sec.*, No. 10-CV-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011) (Michelson, M.J.), *report and recommendation adopted*, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011) (Edmunds, J.) (concluding that there is "no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration" and holding that, instead, the "Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (Ludington, J.) (noting that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work").[2]  Plaintiff's statement of error does nothing to

---

[2] *See also Paul v. Comm'r of Soc. Sec.*, No. 2:17-CV-12391, 2018 WL 4500200, at *10 (E.D. Mich. Aug. 24, 2018) (Patti, M.J.), *report and recommendation adopted*, No. 17-12391, 2018 WL 4492272 (E.D. Mich. Sept. 19, 2018) (Cox, J.).

explain the allegedly insufficient mental health RFC. (ECF No. 16, PageID.602-603.) On the other hand, at Step 3, the ALJ agreed with Dr. Czarnecki that Plaintiff "would have a moderate degree of limitation" in CPP and found accordingly;[3] then, within the RFC determination, the ALJ assigned "great weight" to Dr. Czarnecki's opinion that Plaintiff was capable of "simple, rote, repetitive tasks with brief, occasional and superficial social interaction." (R. at 21, 24, 73-75.) Thus, there is support in the record for the mental RFC assessment's various − "understanding & memory" and/or "sustained concentration & persistence," "social interaction" and "adaptation" −limitations.

### 2. Opinion evidence

By way of background, Plaintiff treated with Henry Ford Allegiance Family Medicine (HFAFM) from August 2014 – July 2017 (R. at 347-377, 392-458) and with HFA Physical Medicine & Rehabilitation in February 2018 (R. at 506-508). More significant to the issue at bar, Plaintiff treated with Dr. Prasad or LifeWays Community Mental Health from July 2017 to March 2018. (R. at 390-391 [Ex. 5F], 459-505 [Ex. 7F].) ALJ Chavez referred to the LifeWays July 2017 notes,

---

[3] In fact, of the 7 CPP sub-areas, Dr. Czarnecki rated Plaintiff "not significantly limited" as to 5 sub-areas and "moderately limited" as to 2 sub-areas. Thus, a conclusion that Plaintiff was "moderately limited" in CPP inures to Plaintiff's benefit.

even if not with attribution, at least twice in the Step 3 discussion and at least three times within the RFC discussion.  (R. at 20-21, 24-25, 464-465, 497-505.)

Within his RFC discussion, ALJ Chavez made several, specific assignments of weight, including:

- great weight to the April 2017 opinion of consultative examiner Dr. Lem (as cosigned by Dr. Brooks) that Plaintiff "appeared capable of performing simple and repetitive tasks, even on a sustained basis[,]" and "would likely have difficulties working effectively with other people and managing common work-related stressors[,]" (R. at 382);

- great weight to state agency psychological consultant Dr. Czarnecki's July 11, 2017 opinion that Plaintiff "retains the mental capacity for simple, rote, repetitive tasks with brief, occasional and superficial social interaction[,]" (R. at 75); and,

- some weight to Dr. Prasad's July 25, 2017 opinion that, "while dealing with on going [sic] stressors which are pervasive and long-standing," Plaintiff's "ability to focus and concentrate would be impaired[,]" (R. at 502).

(R. at 24-25.)

Plaintiff argues that ALJ Chavez erred "by not giving controlling weight, or proper weight otherwise, to treating physician opinions such as Manish Prasad, M.D." (ECF No. 16, PageID.603.)  Perhaps, as Plaintiff argues, Dr. Prasad's notes comprise "the entire Lifeways record[,]" and "he is the only specialized psychiatric doctor to have overseen Horton's care and conditions for an extended period on this record."  (ECF No. 16, PageID.604.)  Nonetheless, as to Dr. Prasad's July 25, 2017 opinion, the ALJ further explained:  "While this statement is vague and

without further explanation or indication of the degree of impairment, the record

supports this opinion and it is therefore given some weight." (R. at 25.) This is

not, as Plaintiff would have it, "wan dismissal to the Lifeways psychology

documentation." (ECF No. 16, PageID.604-605.) Instead, having twice

recognized Dr. Prasad as Plaintiff's psychiatrist, the ALJ assessed Dr. Prasad's

opinion based on the supportability and/or consistency factors. (R. at 21, 24-25; 20

C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).)

Finally, Plaintiff refers to repeated documentation of "limited

concentration," and other difficulties, which allegedly have an effect upon

Plaintiff's ability to do "unskilled work." (ECF No. 16, PageID.605; R. at 461,

469, 475, 481, 487, 493, 499.) However, the ALJ is not required to expressly cite

each of the Lifeways records. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496,

508 (6th Cir. 2006) (citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436,

453 (6th Cir. 1999)) ("While it might be helpful for an ALJ to articulate his

reasons for crediting or discrediting each ... opinion, it is well settled that 'an ALJ

can consider all the evidence without directly addressing in his written decision

every piece of evidence submitted by a party.'"); *see also Simons v. Barnhart*, 114

F. App'x 727, 733 (6th Cir. 2004) ("[A]n ALJ is not required to discuss all the

evidence submitted, and an ALJ's failure to cite specific evidence does not indicate

that it was not considered.") (citation omitted).  In fact, on three separate

occasions, the ALJ stated that he considered "the entire record."  (R. at 19, 22, 25.)

### 3.   Agoraphobia, bipolar disorder & neck impairments

Plaintiff argues that the ALJ erred by "failing to incorporate even repeatedly

documented impairments . . . into [the] [RFC][.]"  (ECF No. 16, PageID.605.)  In

particular, Plaintiff mentions:  (a) agoraphobia, which is "[a] mental disorder

characterized by an irrational fear of leaving the familiar setting of home, or

venturing into the open, so pervasive that a large number of external life situations

are entered into reluctantly or are avoided[,]" *Stedman's Medical Dictionary* 18100

(Nov. 2014); (b) bipolar disorder, which is "an affective disorder characterized by

the occurrence of alternating manic, hypomanic, or mixed episodes and with major

depresive [sic] episodes[,]" *Stedman's Medical Dictionary* 259770 (Nov. 2014);

and, (c) neck impairments.  (ECF No. 16, PageID.605-606.)

### a.   Agoraphobia and bipolar disorder

As for agoraphobia and bipolar disorder, LifeWays Community Mental

Health records list several such diagnoses.  (R. at 390, 463, 464, 471, 477, 483,

489, 495, 501.)  There are also bipolar-related diagnoses within the records of

HFAFM.  (R. at 395, 400, 405; *see also* R. at 422.)

ALJ Chavez's June 20, 2018 opinion acknowledges Plaintiff's claim that

bipolar disorder is among his allegedly disabling conditions.  (R. at 22, 179.)

Moreover, with reference to Dr. Prasad's July 2017 treatment, which diagnosed, *inter alia*, agoraphobia (R. at 464, 501), the ALJ noted:  "After the evaluation  of the claimant Dr. Prasad, offered the *impression* that the claimant exhibited the clinical signs and symptoms most consistent with generalized anxiety disorder, agoraphobia, major depressive disorder, recurrent, moderate, and unspecified personality disorder[.]"  (R. at 24 (emphasis added).)

Plaintiff claims that, at best, ALJ Chavez "treated such impairments as allegations and mere possible conditions."  (ECF No. 16, PageID.605.)  Even if this were true, "[t]he mere diagnosis of [a condition] says nothing about the severity of the condition."  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."  *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014).  *See also Taylor v. Berryhill*, No. 5:16CV2107, 2017 WL 2427639, at *23 (N.D. Ohio May 17, 2017) ("While Nurse Nicholson did diagnose bipolar affective disorder and prescribe an anti-psychotic medication in May 2014, Taylor fails to demonstrate these developments resulted in functional limitations greater than that set forth in the RFC."), *report and recommendation adopted sub nom. Taylor v. Comm'r of Soc. Sec.*, No. 5:16CV2107, 2017 WL 2422796 (N.D. Ohio June 5, 2017); *Keith A. v. Comm'r of Soc. Sec.*, No. 1:18-CV-3035-FVS, 2019 WL 854586, at *4 (E.D. Wash. Jan. 15,

2019) ("aside from this bare diagnosis, Plaintiff fails to cite any

specific limitation resulting from bipolar disorder, at any point in the longitudinal

record, that was not included in the assessed RFC.") (referencing 9th Cir. Cases).

Also, Plaintiff claims that "[t]he mood variability and fear of certain spaces

inherent by definition of those concrete and affirmed diagnoses do not make it into

the RFC."  (ECF No. 16, PageID.605.)  Yet, Plaintiff has not shown that the mental

health RFC – "simple, routine, and repetitive tasks," "simple, work-related

decisions," "occasional contact with the general public and coworkers," and

"occasional changes in the work setting" – fails to account for these specified

symptoms of his agoraphobia and bipolar disorder.  In order to establish harmful

error anywhere within the Steps 1-4 analysis, it is Plaintiff's burden to do so.

*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an

error is harmful normally falls upon the party attacking the agency's

determination."); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th

Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this

burden shifts to the Commissioner only at Step Five.").

### b.    Neck impairments

As for neck impairments, the *introductory* portion of Plaintiff's brief points

to Maria Del Carmen Soto, D.O.'s *pre-AOD* August 8, 2014 notes and Abdullah

Adnan, D.O.'s February 21, 2018 notes to illustrate neck pain or tenderness.  (ECF

No. 16, PageID.595, 599; R. at 453-456, 506-507.)  Yet, ALJ Chavez's review of

the physical MER expressly acknowledges the August 8, 2014 notes regarding

neck pain and right trapezium tenderness and the February 21, 2018 notes

regarding mild cervical tenderness.  (R. at 23, 455, 507.)

More importantly, Plaintiff's seemingly related claim — that "[e]ven the neck

impairments should have been explored by this ALJ, with a neck [examination]

ordered for this homeless claimant before the twice-documented, consistently, and

spanning-years neck problem was simply excluded from the RFC[,]" (ECF No. 16,

PageID.606) — is otherwise undeveloped.  Here, two points are noteworthy.  First,

at the time of the July 2017 DDE, state agency consultant Twaide Langham, D.O.

reviewed several records and set forth a written medical evaluation, which, in part,

referred to the independent medical consultative examination (IMCE), albeit

without attribution to Dr. McGuire.  (*See* R. at 68-70, 384-389.)  Dr. Langham's

conclusion that there was "[n]o MDI[,]" *i.e.*, medical determinable impairments,

appears to be the basis for the SSA's ultimate assessment that Plaintiff had "no

MDI physical."  (R. at 70, 76.)  Second, ALJ Chavez concluded that "the medical

evidence shows that *physical* impairments do limit [Plaintiff's] ability to perform

work related activities and justify the limitations described in the above light

exertion functional capacity[,]" after which the ALJ cited, *inter alia*, July 2015

treatment records, December 2016 preventive exam notes, the April 24, 2017 CE

report by Dr. McGuire, and February 21, 2018 progress notes.  (R. at 23 (emphasis added), 449-452, 355-359, 384-389, 506-508.)

In sum, Plaintiff has not shown that the physical RFC – with its exertional limitation to light work, as well as certain postural, manipulative and environmental limitations (R. at 22) – fails to account for his neck impairment. Stated otherwise, I agree with the Commissioner that Plaintiff "does not prove a more limited RFC based on a neck impairment, as is his burden."  (ECF No. 17, PageID.624.)  *See Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558, 569 (E.D. Mich. 2019) (Lawson, J.) ("the claimant bears the burden of demonstrating the need for a more restrictive RFC.") (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.") (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)).

### c.    Summation

Plaintiff suggests that ALJ Chavez did not provide an "accurate and logical bridge," between the evidence and the RFC and failed in his "duty to investigate the facts and develop the arguments both for and against granting benefits."  (ECF No. 16, PageID.606.)  Yet, the physical RFC provides exertional, postural,

manipulative and environmental limitations, and the mental RFC provides limitations related to understanding & memory and/or sustained concentration & persistence, social interaction, and adaptation.  Plaintiff bears the burden of establishing that his impairments caused more limitations than those assessed by the ALJ.  *Bickerstaff v. Comm'r of Soc. Sec.*, No. 2:15-CV-10917, 2016 WL 4182756, at *11 (E.D. Mich. July 15, 2016) (Patti, M.J.) (referencing 20 C.F.R. § 416.912(c)), *report and recommendation adopted*, No. 15-10917, 2016 WL 4158383 (E.D. Mich. Aug. 5, 2016) (Lawson, J.).  He has not done so, nor has he shown error in the ALJ's consideration of the MER or his assignments of weight to the mental health opinions.  (R. at 23-25.)

### 4.      Alcohol and/or drug abuse

Within the July 2017 disability determination explanation (DDE), the state agency consultant(s) acknowledged Dr. Lem's report for its reflections on Plaintiff's past history of substance abuse and Plaintiff's diagnosis of alcohol use disorder, which was "in full and complete remission[.]"  (R. at 69, 71, 75, 378, 382.)  In addition, the DDE concludes that "[t]here is no evidence of any substance abuse disorder/DAA [drug addiction or alcoholism] issue[.]"  (R. at 76.) Moreover, at the May 31, 2018 administrative hearing, the following exchange took place between the ALJ and Plaintiff:

Q.      Do you drink?

A.     No, sir.

Q.     Use any illegal drugs?

A.     No, sir.

Q.     Use medical marijuana?

A.     No, sir.

(R. at 46-47.)

Plaintiff claims that the ALJ improperly analyzed Plaintiff's disability and "the extent to which alcohol and/or drug abuse does or does not negate it[.]"  (ECF No. 16, PageID.606.)  By way of background, Plaintiff was allegedly incarcerated from 2004-2016, *i.e.*, for 12 years.  (R. at 71, 75, 379.)  At the April 11, 2017 CE, Dr. Lem noted that Plaintiff had been "abstinent from alcohol for the last 14 years[,]" and "abstinent from marijuana as well."  (R. at 378.)

Plaintiff claims that the LifeWays records indicate "how much the drug and alcohol addiction is an ongoing problem to be wrestled with," though "it is the severe psych symptoms actively causing problems."  (ECF No. 16, PageID.606.)  Here, Plaintiff seems to refer to the various July 2017 to March 2018 diagnoses of moderate "alcohol use disorder" and indications of "[m]ore severe mental disorder / less severe substance disorder."  (R. at 463, 464, 471, 477, 483, 489, 495, 501.)  Yet, he claims, ALJ Chavez "fails to acknowledge the alcoholism . . . as even an ongoing impairment."  (ECF No. 16, PageID.606.)  Even so, the Court's own

review of the LifeWays records reveals that, *inter alia*:  (a) on July 11, 2017 Dr.

Prasad "[e]ncouraged him to work on maintaining abstinence from illicit drugs and

alcohol that []he has done well so far[,]" (R. at 465); (b) on August 22, 2017, Dr.

Prasad noted that Plaintiff "[h]as been able to maintain abstinence for alcohol or

illicit drugs[,]" (R. at 491); and, (c) on March 8, 2018, Dr. Prasad noted "[n]o

alcohol or illicit drug use."  (R. at 459).  In sum, Plaintiff's blanket citation to

LifeWays records does not establish an "ongoing" drug and alcohol problem (ECF

No. 16, PageID.599, 606-607), and, despite the diagnoses within the LifeWays

records, notes from Plaintiff's most recent visit indicate that Plaintiff was not using

alcohol or illicit drugs.

Plaintiff then contends that the ALJ did not use the two-step process set forth

in 20 C.F.R. § 404.1535, namely, where there is medical evidence of drug

addiction or alcoholism, the SSA will "evaluate which of your current physical and

mental limitations, upon which we based our current disability determination,

would remain if you stopped using drugs or alcohol . . . [,]" and then "determine

whether any or all of your remaining limitations would be disabling."  20 C.F.R. §

404.1535(b)(2).  (ECF No. 16, PageID.607.)  Also, Plaintiff points out that

"alcohol abuse is not a factor to be considered in determining the weight to be

given to a treating-source opinion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d

365, 381 (6th Cir. 2013) (referencing 20 C.F.R. § 404.1527(c)).  Yet, at least in the

paragraph where the ALJ explains his assignment of "some weight" to Dr. Prasad's July 2017 opinion, there is no indication that alcohol abuse was considered.  (R. at 24-25, 502.)  More to the point, it is unclear why Plaintiff contends that "we can only reasonably presume that an improper presumption was made as to credibility and/or the weight due to Dr. Prasad's opinions."  (ECF No. 16, PageID.607.)  Why should the Court presume that?  Even if, as Plaintiff argues, "substance abuse should not be considered until the Commissioner first makes a finding that a claimant is disabled[,]" (*id*.), the Court agrees with the Commissioner that Dr. Prasad's records do not suggest a substance abuse condition (ECF No. 17, PageID.625).

### 5.      Credibility and Substantial Gainful Activity (SGA)

Plaintiff's final statement of error − which is perfunctory and largely undeveloped − purports to challenge the ALJ's credibility determination and, also, seems to take issue with the ALJ's interpretation of Plaintiff's 2015 earnings. (ECF No. 16, PageID.607-608.)  At this point, it is helpful to note that Plaintiff earned $7,098.13 in 2015, which appears to be a combination of $2,503.84 at Eagle Powder Coating, Inc. and $4,594.29 at Flexible Staffing Solutions (R. at 172, 174, 176.)  Plaintiff had 4 quarters of coverage (QCs) that year.  (R. at 176; *see also* ECF No. 16, PageID.595.)

### a.      Testimony about Plaintiff's vocational background & medication side effects

At the May 31, 2018 administrative hearing, Plaintiff testified about his past

jobs.  (R. at 39-43.)  Of particular note is the following exchange between the ALJ

and Plaintiff about his work at Eagle Powder Coating:

Q       When did you last work?

A       I believe it was October 2015.   I'm not too sure.

Q       What was your job in October 2015?

A       I worked a production line for a paint company.

Q       Eagle Powder Coating?

A       Yes, sir.

Q       How long did you work there?

A       Six months.

Q       Did you start out at Eagle Powder Coating through Flexible
        Staffing Solutions?

A       Yes, sir.  Temp service.

Q       Six months you said?

A       Yes.

Q       You were working there *full-time*?

A       *Part-time*, sir.

Q       You're being paid more than minimum wage?

A       No, sir, minimum wage.

Q    I see then $7,000 over six months.  That would definitely be
     over minimum wage *full-time*.

A    It varied in hours if they had parts coming in.

(R. at 39-40 (emphases added).)[4]

Plaintiff also testified about his medications, including that Seroquel makes

him sleepy.  (R. at 44-48, 54-55; *see also* R. at 196, 212.)  At some point, Plaintiff

was fired for poor work – seemingly related to sleepiness caused by Seroquel – and

confrontation with an employee.  (R. at 41, 53, 55.)  In his own words, "I was

having confrontation with an employee[,]" which led to "arguing, fighting,

verbally abusing.  *** I was pretty angry.  Was getting pretty angry at that time of

my life."  (R. at 53.)

### b.    The ALJ's credibility assessment

At the outset of the RFC discussion, ALJ Chavez stated that he had

"considered all symptoms and the extent to which these symptoms can reasonably

be accepted as consistent with the objective medical evidence and other evidence,

based on the requirements of 20 CFR 416.929 and SSR 16-3p[,]" which concern

---

[4] According to Plaintiff, the calculation should be "readily-documented 2015
Michigan minimum wage of $8.50 an hour," or 823.53 hours of work, which, "if
earned over six months would mean just over 30 hours per week average[,]" *i.e.*,
26 weeks at 31.67 hours per week.  (ECF No. 16, PageID.595, n.29.)  Nonetheless,
the math is not an identified claim of error and would be harmless, in any case, for
the reasons stated in Section E.5.c, *infra*.

how the SSA evaluates symptoms, including pain. (R. at 22; *see also* 20 C.F.R. §

404.1529.) Then, ALJ Chavez found that Plaintiff's statements concerning the

intensity, persistence and limiting effects of her alleged symptoms were not

entirely consistent with the medical evidence and other evidence in the record. (R.

at 22.) More specifically, he noted:

> As for the claimant's statements about the intensity, persistence, and
> limiting effects of his or her symptoms, they are *inconsistent* with the
> *medical evidence of record*. In terms of the claimant's physical
> conditions, the medical evidence shows that physical impairments *do*
> limit [his] ability to perform work related activities and justify the
> limitations described in the above light exertion functional capacity.

(R. at 23 (emphases added).) The ALJ further stated that the medical evidence of

record showed that Plaintiff's "mental impairments warrant the limitations as

described in the [RFC] assessment adopted herein[.]" (*Id.*) The ALJ supported

these statements with citations to all but one of the eight medical record exhibits.

(R. at 23-24.) In other words, the ALJ considered "whether there [we]re any

inconsistencies in the evidence and the extent to which there [we]re any conflicts

between [Plaintiff's] statements and the rest of the evidence, including [his]

history, the signs and laboratory findings, and statements by [his] medical sources

or other persons about how [his] symptoms affect [him]." 20 C.F.R. §§

404.1529(c)(4), 416.929(c)(4). As the ALJ explained, he gave "careful

consideration [to] the entire record," and "reasonable consideration to the

claimant's testimony and the findings of his treating and examining physicians[.]"

(R. at 25.)  The ALJ did not toss out or discount Plaintiff's testimony wholesale. His credibility assessment was both permissible and supported.

To the extent Plaintiff is truly challenging the ALJ's assessment of Plaintiff's symptoms, he states that his work, even though only part-time, "seems to have significantly worsened his upper extremities[,]" and that he "got fired for an argument, etc." (ECF No. 16, PageID.607.)  He tenders no record citation in support.  Here, Plaintiff relies on *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) for the proposition that "it is not a sufficient refutation of credibility for the ALJ to point out that no doctor has corroborated testimony or precise functional limitation." (ECF No. 16, PageID.608.)  But that is not what happened here; instead, the ALJ's credibility assessment noted *inconsistency* between the Plaintiff's statements and the medical evidence of record.  (R. at 22-23.)  This is entirely appropriate.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Walters,* 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters*, 127 F.3d at 531).  It is for this reason that the ALJ's credibility findings

have at times been characterized as "unchallengeable." *Payne v. Comm'r Soc. Sec.,* 402 F.App'x 109, 113-114 (6th Cir. 2010); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility**.** It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (alternation, quotations and citations omitted).  Plaintiff's two-paragraph credibility argument, which is void of any record citation (*see* ECF No. 16, PagID.607-608), fails to clear the hurdle.   Moreover, "[o]n judicial review of a denial of disability insurance, second-guessing the credibility findings of the ALJ is inappropriate." *Grubb v. Comm'r of Soc. Sec.*, No. 10-CV-11064, 2011 WL 846064, at *1 (E.D. Mich. Mar. 8, 2011) (Murphy, J.) (citing *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679 (6th Cir.1989)); *see also Elsey ex rel. Elsey v. Comm'r of Soc. Sec.*, No. 10-CV-12334, 2011 WL 4953075, at *1 (E.D. Mich. Oct. 13, 2011) (Murphy, J.) (same).

### c.    Substantial Gainful Activity (SGA)

At Step 4, when finding that Plaintiff was unable to perform any past relevant work, the ALJ concluded that Plaintiff's past work as a spray paint operator and a disc grinder "was [SGA], performed long enough to achieve average performance, and performed within the relevant period."  (R. at 25; *see also* R. at 57-58.)  However, immediately thereafter, the ALJ also noted, "[t]he

vocational expert testified that given the limitations above, the claimant could not perform his past relevant work." (R. at 25.) Moreover, it appears as if the ALJ's references to "substantial gainful activity" or "SGA" were confined to his discussions of the issues and applicable law (R. at 17, 18), his Step 1 conclusion (R. at 19), and his Step 4 conclusion (R. at 25). Stated otherwise, it does not appear that the ALJ used SGA as part of his credibility assessment, which ordinarily occurs between Steps 3 and 4.

Plaintiff argues that ALJ Chavez's credibility assessment was errant, because he got key, consequential facts wrong, "including as to recent relevant work[.]" (ECF No. 16, PageID.607.) Plaintiff contends that "[r]emand is needed[,]" in particular because there was "never-SGA part-time work over four quarters in 2015." (ECF No. 16, PageID.608.) Yet, "[s]ubstantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a *part-time* basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 416.972(a) (emphasis added). Moreover, "[g]ainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). Accordingly, to the extent Plaintiff attacks the ALJ's Step 4

determination that Plaintiff's spray paint operator and disc grinder work constituted SGA, the argument is unavailing.

### F. Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters*, 127 F.3d at 529. Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 16), **GRANT** Defendant's motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 14, 2020                        s/*Anthony P. Patti*
                                                 Anthony P. Patti
                                                 UNITED STATES MAGISTRATE JUDGE